ASSOCIATES DISCOUNT CORPORATION *v.* BLEASE WELDON

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 2-617-6013

Argued December 19, 1966—decided February 17, 1967

*Sidney Vogel,* of Norwalk, for the appellant (defendant).

*Milton H. Hausman,* of Bridgeport, for the appellee (plaintiff).

JACOBS, J.  The defendant seeks on this appeal to reverse a judgment of the Circuit Court in favor of the plaintiff of $1551.98 plus costs and an attorney's fee of $232.80, resulting from the repossession and resale of an automobile.

On July 6, 1960, the defendant purchased of Miller-Pinto, Inc., of Bridgeport, a used 1959 Chevrolet automobile under a retail instalment contract. General Statutes § 42-83 (e).  Under the terms of the contract, the defendant promised to pay a time

balance of $2880.36, payable in thirty-six monthly instalments of $80.01 each, beginning on August 6, 1960. The contract contained the usual in terrorem clause which provided for delinquency and penalty charges if the buyer failed to meet a payment on time, "and in addition to such delinquency and collection charge, attorney's fees not exceeding 15% of the amount due and payable under this note when this note is referred to an attorney . . . for collection, plus the court costs." On the same date, July 6, 1960, the vendor assigned the contract and accompanying note to the plaintiff.

The defendant became in default in the instalment payments, having failed to make any payments called for by the contract, and on September 21, 1960, the plaintiff repossessed the automobile. On September 26, 1960, the plaintiff notified the defendant by certified mail that the automobile would be sold at public auction on October 10, 1960, at 9:10 a.m., at the Miller-Pinto, Inc., garage, located at 17 North Avenue, Bridgeport, Connecticut. The notice of sale also contained this statement: "If sufficient money is not realized from this sale of car to satisfy the amount due; under the terms of the contract you will be held liable for the deficiency." In a letter to the defendant accompanying the notice of sale, the plaintiff advised the defendant of his right to redeem the car, of the balance due and owing under the terms of the contract and of his right to attend the sale. The letter also stated: "There is a very good reason why you should redeem the car if this is at all financially possible for you. If you cannot redeem, the same good reason makes it advisable for you to attend this sale and to bring some responsible acquaintances with you who might be interested in owning the car. The reason is this: when we auction your car, we cannot be sure that we will get a bid high enough to pay

the balance on your account, and if we do not, the same law makes you responsible for the difference." The defendant failed to appear on the date and at the place fixed by the notice of sale. Only the plaintiff attended. It made a bid of $1000. On the next day, October 11, 1960, the plaintiff resold the automobile to Miller-Pinto, Inc., and realized the sum of $1200 from such resale. The defendant's account was credited with the amount of the resale to Miller-Pinto, Inc., and an insurance rebate of $130.16, leaving an amount due and owing the plaintiff of $1551.98 plus court costs and an attorney's fee of $232.80. Judgment for the deficiency was rendered for the plaintiff. Neither party had caused an appraisal to be made of the reasonable cash value of the automobile either at the time of the retaking or on the date of the resale; neither party offered evidence at the trial as to that value.

The defendant concedes, as indeed he must, that the notice of sale complied with the provisions of the statute. § 42-98 (d); see *Elm Buick Co.* v. *Moore*, 150 Conn. 631, 634.

The central question projected by the defendant in his brief and on oral argument in attacking the validity of the judgment for the deficiency owing after the resale is that the plaintiff failed to give notice by publication of the proposed sale; that no licensed auctioneer was present to conduct the sale; and that the sale was nothing more than a bookkeeping entry. "To sit quietly in one's office," says the defendant, "and engage in a bookkeeping transaction is not a sufficient compliance with the statute. The statute was designed to protect the rights of both parties. It was not designed to place a debtor at the mercy of a credit manager's whim." In other words, the defendant's claim is that the resale was not conducted in a commercially reasonable manner

and that the obligation is on the secured party to use his best efforts to see that the highest possible price is received for the chattel.

Under our Retail Instalment Sales Financing Act (chapter 733), the secured party could have elected to liquidate the secured transaction, default having occurred and the buyer having paid less than 50 percent of the purchase price, by keeping the chattel as its own free of the debtor's equity, thereby waiving any claim to a deficiency judgment. §§ 42-98 (e), 42-98 (h).[1] "The policy permitting this non-judicial type of benevolent strict foreclosure is based upon the conclusion that experience has shown that parties are frequently better off without a resale of the collateral." 1 Coogan, Hogan & Vagts, Secured Transactions § 8.04. "However . . . [the plaintiff] chose to exercise the option, given it under the last sentence of § 42-98 (e), to resell the car and therefore was required, under § 42-98 (d), to 'give the retail buyer [the defendant] not less than ten days' written notice of the time and place of sale either personally or by registered or certified mail directed to the retail buyer at his last-known place of business or residence.' " *Elm Buick Co.* v. *Moore,* supra, 632; note, 49 A.L.R.2d 15, 25. It is also provided under § 42-98 (d) that "[t]he holder of the contract may bid for such goods at any public sale. If the holder of the contract directly or indirectly buys such goods at such resale, the proceeds of the resale shall be considered to be either the amount bid by the holder of the contract or the fair cash market

---

[1] As Justice King, later chief justice, pointed out, the 1961 amendment, not applicable to the present case, increased the buyer's equity requisite for a compulsory sale from 50 percent to 60 percent and extended the time in which the resale must be held from thirty days to ninety days after giving notice. *Elm Buick Co.* v. *Moore,* 150 Conn. 631, 632 n.1; see *Modern Auto Finance Corporation* v. *Preston,* 2 Conn. Cir. Ct. 492, 495 n.1.

value of such goods at the time of resale, whichever is the greater; but the amount bid shall be presumptive evidence of such fair cash market value."

We find no requirement under the compulsory resale provisions of the statute, § 42-98 (d), for the secured party adequately to advertise the sale by publication or to furnish an auctioneer to conduct the sale. Even if such requirements were desirable, there is no justification for reading them into the statute. "We must construe and apply the statute as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Granniss* v. *Weber,* 107 Conn. 622, 630. "It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." *Duart* v. *Axton-Cross Co.,* 19 Conn. Sup. 188, 190.

We have examined *Universal C. I. T. Credit Corporation* v. *Beckwith,* 23 Conn. Sup. 362, 1 Conn. Cir. Ct. 241, and *Modern Auto Finance Corporation* v. *Preston,* 2 Conn. Cir. Ct. 492, relied upon by the defendant; these cases are distinguishable on the facts from the instant case.

There is no error.

In this opinion KOSICKI and KINMONTH, Js., concurred.